Good morning, Your Honors. Todd Burns on behalf of Pell and Eric Banks. My plan is to start with jurisdiction, but hopefully save a little bit of time for the speedy trial issue. With respect to jurisdiction, if the Court is aware, there have been some 28J letters submitted recently on that issue, particularly with respect to the 2255 appeal and the Redmond case in front of this Court. In the direct appeal of Redmond, the same sufficiency issue was raised with respect to FCI Victorville. And in that case, the government submitted new documents on appeal, and the panel, a divided panel, took judicial notice and concluded that FCI Victorville is on land over which there is federal jurisdiction. Judge Ikuda dissented from that holding. Now, in the 2255 appeal, which is more recent, the panel effectively seems to concede that there is not federal jurisdiction over that land. So at this point, four out of the six Ninth Circuit judges that have looked at the issue have concluded that the documents submitted on direct appeal in Redmond, which are the documents the government relies on in this case, do not establish. Can I ask you a question? But those are unpublished, non-precedential opinions. And as you said, Judge Ikuda's statements were in a dissent, so it wasn't even in the majority opinion. So how would we just then deal with Reed? That is the published opinion that says that testimony from inmates and employees is sufficient to establish that jurisdiction element. Well, Reed didn't deal with the issue here. It just was answering the question of whether or not under Section 113, testimony from employees... But I don't understand why that isn't the issue here. Reed says, likewise, uncontradicted testimony from inmates or employees at a federal prison can establish the jurisdictional element, and the jurisdictional element is the Special Maritime and Territorial Jurisdiction of the United States, right? Well, Reed didn't even discuss Section 18 U.S.C. Section 7, subsection 3, that defines Special Territorial Jurisdiction. It didn't discuss the fact that cases arriving, you know, transfers of property before 1940 are subject to a different presumption than those that come after 40. It didn't do any of the analysis that was done in Davis. But again, it's a reasonable juror can conclude that from these statements, in that case, that FCI Phoenix was under federal jurisdiction at the time Reed allegedly committed assault. We're looking here at substantial evidence from which a juror could conclude, I mean, even putting aside any plain error issues. But I don't understand how Reed isn't absolutely controlling. And if there... If you... If that's the way we decide and you think Reed is wrong, you have a remedy. But we can't ignore Reed. Well, again, Reed was dealing with FCI Phoenix, not FCI Victorville. And FCI Phoenix, apparently, the transfer involved in that case was before 1940. And as the much more detailed analysis in the Second Circuit's Davis case indicates... testimony by an employee is enough to get to the jury. And from what... And his testimony from which a juror could conclude that there's federal jurisdiction. And that's the principle of Reed. And as a three-judge panel, we have no ability to listen to an argument as a panel that Reed was wrong, absent something that completely calls Reed's reasoning into question. And there is nothing. Well, as Your Honor said at the beginning of that statement, none of that was raised in Reed. And I would agree with that. And that's why I would assert that the issue presented here wasn't presented, much less dealt with in Reed. And, you know, it bears noting that in both the Redmond cases, of course, the government was relying on Reed for the same argument. And neither of the panels in those cases bid on that and said that Reed controlled. They instead looked at the definition under 18 U.S.C. Section 7 and looked at the documents submitted. And now we've gotten to a point where the conclusion of at least four of the six of those judges is that the documents submitted do not establish extraterritorial jurisdiction. And so, you know, they both... In both cases, they're notice to be taken based on those documents. That is sort of its lead argument, that based on those documents that submitted, judicial notice should be taken. And judicial notice under Section 201 of the Rules of Evidence is usually for facts that are a slam dunk. You know, they're facts that cannot... Counsel, regardless of the judicial notice issue, what I'm looking at here is the trial record. And I'm looking at the testimony at the trial, and I'm looking at Reed. And maybe you have an in-bank argument. Maybe somebody else has an in-bank argument in a case where something else was presented at the trial level. But honestly, I just don't see that argument could prevail in this case, given what was done at the trial and given Reed. Well, and I obviously understand what the much that I can say in response to it other than what I've just said, which is, you know, that Reed did not address the issues that have been raised here specifically with respect to the definition of extraterritorial jurisdiction and the evidence with respect to thereto. But if the court says, well, Reed didn't address the issue, but nevertheless, the holding is so broad that it controls, well, then Mr. Banks loses. But I don't think that that has the type of analysis that's required here for an issue that wasn't raised, much less decided, in Reed. And in your view, what was lacking in the testimony? Well, anything to explain that the jurisdiction had been transferred from the state to the federal government and had been accepted by the federal government. Now, Judge Ikuda thinks that there in her dissent indicates that there's insufficient evidence that jurisdiction was transferred over the land on which the prison sits. The three-judge panel on the 2255 appeal seems to be more concerned with the fact that there is insufficient evidence that jurisdiction was accepted by the federal government, because under California and federal law, that would have to be indicated by a document filed in the San Bernardino County Recorder's Office. So I think the fact, too, that there are two different approaches as to why the evidence is insufficient as to federal jurisdiction is another reason that this is not a slam-dunk type of issue that is one over which judicial notice can be taken. I mean, judicial notice is for facts that cannot reasonably be disputed. These facts obviously can reasonably be disputed. Now, I focused on judicial notice, but I think these are also good reasons why this sort of issue should be submitted and decided by a jury. Now, and I understand Judge Bennett would say, well, it has been under Reid, but of course, I've drawn the distinction there that I've already pointed to. Although, of course, if somebody wanted to raise this at trial, they could make the argument to the trial judge that this should be decided by a jury as opposed to everybody agreeing on a jury instruction that told the jury that all they needed to find was that the assault took place at Victorville. Well, with respect to that, I believe the Rule 29 motion on all elements preserved that issue for appeal. So I have not specifically raised the jury instruction issue, though. I know Ms. Richards— No, I understand that. But, I mean, in terms of wanting a jury to decide the issue based on documents as opposed to testimony, somebody could make that argument to the trial judge no one did here. Well, I think, again, it should have been decided by the jury. And if it wasn't, it wasn't. And I think that, therefore, there's insufficient evidence, regardless of whether or not that specific argument was made. We take the evidence in the light most favorable to the government? Yes. Well, I don't think on a sufficiency claim you necessarily do. Well, yes, you do. So you have an officer testifying that he worked for the Bureau of Prisons at USPV at the time of the attack. All three officers testified that the attack occurred on the field at USPV. A physician assistant testified that he was employed by the Bureau of Prisons at USPV, Victorville, and that he treated Alexander at USPV after the assault. This testimony was uncontroverted. That's right. So, looking at the evidence in the light most favorable to the government, why doesn't that carry the day for the government? Well, as the Second Circuit pointed out in Davis, just because this is a federal prison or even federal land does not mean there's federal jurisdiction. For there to be federal jurisdiction, there has to have been, within the appropriate requirements, a transfer from the state of jurisdiction to the federal government, and that has to have been appropriately accepted. And that was never submitted to the jury. And what we've got now are documents from, again, which four or six judges of this court cannot conclude that there was federal jurisdiction over that land. So, I think, you know, what we know based on the documents they've submitted is that it's a murky question at best, and certainly not one of which judicial notice can be taken. If I may just briefly on the speedy trial issue, I'd just like to say on that, you know, the three continuances involved were all based on stipulations drafted and submitted by the government, proposed orders drafted by the government and signed by the Go ahead, please. You never filed a motion, a speedy trial motion to dismiss, correct? Mr. Banks raised, objected to the fourth and fifth continuance. That wasn't my question, though. My question was, you agree that a motion to dismiss for speedy trial violations was never filed? That's right. Defense counsel did not file such a motion. And the statute says it's waived if you don't file a motion. I'm not sure exactly what the statute says, but I believe the Ninth Circuit, this court in Hall and Hickey, if I have the cases right, indicated that it says the failure of the defendant to move for dismissal prior to trial shall constitute a waiver of the right to dismissal under this section. Yes, and I believe this court in Hall and Bricky said that if the defendant himself objects to the continuance objects to the tolling, that is sufficient sufficient to preserve the issue. But Council in Hall, the court specifically found the defendant had preserved his claim because he had moved to dismiss for violation under the Speedy Trial Act. Well, Mr. Hall, Mr. Banks effectively did the same thing. He objected to the fourth and the fifth continuance and well, but the statute says it's not effectively the same thing. The statute says you have to file a motion. And in Bricky, the court found that the defendant had waived the right to dismissal under the Speedy Trial Act because no motion to dismiss had been filed. Well, he's he's objecting to the trial being put off. So it seems to me he's objecting under the Speedy Trial Act. I don't know how it can be read any other way, and it's being it based on the way the way it can be presented is there's a difference between an objection to a continuance and a motion to dismiss. Well, I think they're two sides of the same coin. The defendant is saying, I want the case to go forward as scheduled, and the defendant is saying the judge is saying, No, I'm going to put it off. But even if the court were to apply plain air review to that, you know, the problems here were all driven by inaccurate statements or misrepresentations made in documents drafted and submitted by the government. And so I think to voice the responsibility for that on to Mr. Banks when he's clearly objecting to these continuances after a year and a half of delay is, you know, somewhat unfair. And also, I think given those circumstances should certainly qualify for plain air review. I mean, there's just no dispute in the record here that Mr. Banks, Mr. White, for example, was not in the hospital, the reason for the second continuance, that there was no new discovery that defense counsel had to review, the reason for the fourth continuance. Those things were just incorrect. All right. You have gone over your time by almost three and a half minutes, but I'll still give you two minutes of rebuttal. But at this moment, do you have any questions? No, thank you. Judge Bennett, do you have any more at this time? No, thank you, Judge. All right. Thank you. All right. Go ahead, please. And we'll ask Ms. Richardson-Royer to please come forward. Good morning, Your Honors. May it please the Court, Elizabeth Richardson-Royer on behalf of Vernon White. I plan to focus this afternoon on the district court's error in excluding Mr. White's evidence of duress. And the district court's error has a procedural and a substantive component. I'll start with the procedural, which is that the Court overstepped what should have been its limited role in evaluating whether Mr. White's evidence, if believed, would establish all three prongs of the duress defense. The Court overstepped this role by making improper factual determinations and findings, for example, that there weren't 20 men standing near Mr. White during the assault, that no one was flanking him on the right side, that the other charged... I'm having a little trouble with that argument, Counsel. Who gave the Court the video? Both parties submitted it. So the judge certainly had the right to look at the video that was submitted by everybody, right? Certainly. And I looked at the video. I would guess my colleagues looked at the video. And I didn't see anybody on his right side. And my recollection is Counsel may even have admitted that there was nobody on his right side. So what was wrong with the judge saying I didn't see anybody on his right side? Well, what was wrong with it? But he put in a declaration saying he was totally flanked, and that declaration was inaccurate. And so then we have two pieces of conflicting evidence, and that is something that should go to the jury. Well, I mean, there are other reasons why I don't think the judge erred, but the pieces of conflicting evidence are a video which absolutely shows no one was on the right side, Counsel, if I'm remembering correctly, admitting that that was an error, as opposed to your client's declaration, which is saying something which is clearly incorrect? That is one of the things that a jury should have been allowed to determine, whether the slight inconsistency between what he said in his declaration and the video meant that he lacked credibility. Other things that the jury should have been entitled to determine and that the court determined instead are whether the other charged individuals were close enough to pose a threat, which the court found they weren't, and that's something the jury should have been able to look at, that the prison staff wasn't close enough to help, which is something that the jury should have been able to look at the video and determine. So what was the evidence? You agree that one of the elements of the duress defense is an immediate threat of death or serious bodily injury, correct? Yes. Okay. And what is the evidence of that? Mr. White signed an affidavit under penalty of murder. I read it. I don't see that in there. What I see is Mr. White speculating about what gang members might or might not do to him, and that that's exactly the kind of speculative evidence that our court has specifically said doesn't work. At excerpt of record 488, he said... I have that in front of me. Okay. So he stated that he knew that he would be assaulted, severely injured, or killed on the spot if he did not follow these orders. And that's exactly what the district court found as speculative without a basis, and the same type of thing that our court has found is speculative and doesn't entitle one to a duress defense. I respectfully disagree that this court has ever found such a specific statement to be insufficient. And also, the district court was not supposed to evaluate whether his statement was credible. That's for the jury to do. And if the jury...  I think the district court was taking it as it was in the declaration and deciding whether a jury could conclude from that that there was an immediate threat of death or serious bodily injury. Taking it as given. Well, at excerpt 17, the court says, and I quote, that the inconsistencies in the video affect Mr. White's credibility. That's a credibility determination. I don't see any other way of reading that. But even if the district court inappropriately made a comment on credibility, that doesn't go to our looking de novo at the issue of whether there was an immediate threat of death or serious bodily injury. If the jury believed Mr. White's representation, if he had been allowed to testify about it, that would have satisfied the first element of the defense. Well, we'll just have to... I don't see it that way, counsel, because I see that what your client put in his declaration doesn't establish, even looking at it in the light most favorable to your client, an immediate threat of death or serious bodily injury. I can sense that I'm not going to sway, Your Honor. But I did want to point out that it's not just Mr. White's declaration, but that the proposed expert found the same thing and would have testified to the same thing. Well, what the expert said is that based on my review of the video, if there were no custodial officers, Mr. White could have been immediately assaulted by other gang members if he refused to commit a gang-ordered assault. And respectfully, I don't think that satisfies the test, even in conjunction with the video and in conjunction with your client's declaration. If a jury believed the expert and Mr. White, that element is satisfied, and that's... What authorities, counsel, best support your argument that your client had no reasonable opportunity to escape, despite being neither surrounded nor without access to prison personnel? He was on the far side of the prison yard, from the gate where staff, unknown whether they were officers or not, were somewhat nearby. Even when they came across the yard toward those staff members and began the assault, 35 seconds passed before officers intervened. And so Mr. White, on the other side of the yard, surrounded by prisoners with homemade knives, had no opportunity to seek help, none. And that's what makes this case different from the other prisoner cases where, for example, somebody had time to seek protective custody, had time to go to an officer and say, my life is in danger. But Mr. White, who had a medical condition that made him take medication that thinned his blood, would have bled out before anyone intervened. And he knew that. Counsel, how do you distinguish United States v. Contento-Pachon and United States v. KUOK, where the court said, to be immediate, a threat must be specific. A veiled threat of future unspecified harm will not satisfy this requirement. Put simply, vague and undetailed threats will not suffice. Where in your client's declaration or anything else submitted to the district court was to be a threat must be specific. A veiled threat of future unspecified harm will not satisfy that requirement. He's not speculating about general gang retaliation. He's saying, these people are going to stab me right now. Where does it say that? I'm sorry, where does it say that? Where I pointed, Your Honor, before, if he did not follow these orders, he would be immediately assaulted. I'm sorry, that's the expert's testimony? Where it says, if there were no custodial officers, Mr. White could have been immediately assaulted? No, at excerpt 488, Mr. White says, I knew if I could not avoid committing this assault, I knew I could not avoid committing this assault, because I would be assaulted, severely injured, or killed on the spot by the people with knives. That's what he's saying, but our court says, a threat must be specific. And he does not in here say anything about any specific threat from anyone. It's a specific threat, although it's not an explicit threat, and I don't see anything in any of the case law saying that the threat has to be spoken or explicit in order to be fully understood by somebody in these circumstances. What is the best case that supports your position, that these allegations are sufficient? I think, contento passione, I think there are just the cases that I've cited in my brief, and I can point you toward some of them. There are many that are distinguishable. I think Cheetong Kwok is another good one, where the threat was immediate, it was understood by the person experiencing the threat, and there was no opportunity to avoid it. And that's exactly what we have here. I know that I'm 20 seconds away from my time. I would like to reserve a few minutes for rebuttal, if possible. All right, well, I may ask you about those cases later, since we're out of time right now, unless my colleagues have any more questions at this time. No, Judge Bennett? Okay, then let's go to Government Counsel. Good afternoon, Your Honors. David Friedman of the United States. May it please the Court. I'd like to start with the jurisdictional issue, which is the only claim that both defendants raised in this case. We agree with Judge Bennett that this issue is controlled by the decision in Reed. In Reed, the defendant was also convicted of a prison assault under 18 U.S.C. 113, and he also argued that the government's proof was deficient because the government didn't submit, quote, historical documents to the jury establishing jurisdiction over FCI Phoenix. And this Court rejected that claim and it held that uncontradicted testimony from victims or BOP officials that an assault occurred at a federal prison is enough to meet the jurisdictional element, and that's exactly the type of testimony that was presented here. How does this overcome the presumption for transfers of territory after 1940 against federal jurisdiction? Well, I think the Court addressed that issue in Redmond. There were two letters that were sent in 1944, one in August 1944 and one in September 1944. In that second letter, the head of the Department of War explicitly accepted jurisdiction over the Victorville Army Air Base that later became the George Air Force Base, and that eventually is where USPV was built. So I think there is an explicit acceptance here, and that's what the Court found in Redmond, that's what several district judges in the Central District have found as well. If you look at Judge Carney's decision in Patino, which we cited in the 28J, and also in the White Answering Brief, he does a very thorough analysis of this issue. Judge Phillips also analyzed these issues in United States v. Inouye, and that's actually cited in Redmond too. I understand that different judges on the Redmond panel raised concerns, but I think with respect to Judge Ikuda, she was concerned that the first letter from August 1944 did not specifically mention the land where Victorville was located. She ignored the second letter from September 1944, and that letter did mention Victorville Army Air Base. But as I think Judge Koh noted in a question, Judge Ikuda was dissenting. That's correct, and she was dissenting. So I think if you look at the only times this has been analyzed, the Redmond panel found there was jurisdiction, and there are several district judges that have reached the same conclusion. I don't think there's any judge or panel that's ever reached a contrary conclusion. In Redmond too, it sort of raised concerns, but it ultimately rejected the claim and held that it was not a defense, that the defense counsel had to raise a trial because it was unlikely to succeed. So for all those reasons, we do think this court doesn't need to go any further than Reed. I think it's controlling on this issue, and it's consistent. But why are you relying on Redmond? The second Redmond case that was issued this year actually says that there's probably merit to the claim that the transfer was not legally effectuated. I wouldn't say we're relying on the second Redmond case, but I think the first panel got it right, and to the extent the second Redmond panel analyzed this issue, it didn't reach a final conclusion. It essentially said maybe perhaps there's merit. Well, the first Redmond case took judicial notice, which Reed says you can't take judicial notice that this is really a jury question, right? And there's really not that much in the first Redmond case. It says the government provided evidence from sources whose accuracy cannot be reasonably questioned, established in the California Conveyed and the U.S. Accepted. There's really not that much there. Well, I think we agree with that analysis. Again, there are the two letters from 1944, and I think the majority concluded they resolved this issue, and we agree with that. But I think it's important to note there are sort of two different issues here, what this court has held in Warren and Smith. Did they have the two letters in the first case in 2018? There's no reference to it in the memorandum disposition. I do believe they had both letters. They were at docket 27 of the record. Again, we've also pointed to the Patino decision where Judge Carney analyzed those same letters. The universe of documents has not really changed, and I think that's part of the reason this is a legal issue. It's something for the court to decide. It doesn't change from case to case. It just either is or it isn't. So what do you think about the language in Reed that says this has to be a jury determination? I think that goes to how this court has interpreted jurisdictional issues. It's a bifurcated inquiry. If you look at Smith and Warren, what this court has said is that when we have a jurisdictional question like this, the court has to determine the question of law as to whether there's federal jurisdiction of a particular area, and the jury determines the question of fact of whether the offense occurred in that area. I think that statement in Reed about the jury finding beyond a reasonable doubt jurisdiction was referring to that second point, that the jury has to— That is, that the jury has to be instructed in order to convict. They have to find that the assault took place at Victorville. Correct, and they were instructed in that manner in this case, and I think it's important to note the only claim that defendants really raise on appeal is that the legal issue had to go to a jury. They argue as a process matter that the jury had to look at these historical documents and determine whether that was jurisdiction. I think that claim is clearly foreclosed by Reed, and they really don't squarely raise the second legal issue as to whether USPB is actually subject to federal jurisdiction. Now, you seem to also argue that the defendants conceded the jurisdictional element by arguing that the defendants were guilty of a lesser-included offense of simple assault. Can you spin that out? Sure. The defense in this case—so the defendants were charged with assault with a dangerous weapon and assault causing serious bodily harm, and the jury was instructed on the lesser-included offense of simple assault. And one of the two elements of simple assault is that the offense occurred within the federal jurisdiction. And here, both defendants, their counsel got up at closing arguments and argued they were guilty of simple assault. And, in fact, counsel for Banks actually directed the jury to the jury instruction for assault and said, you know, the government has proved these elements. So I think, given that they conceded that, in the district court, they can't take a different position and now say, actually, the government did improve the jurisdictional element. And that's what this court held in Benson in terms of abiding judicial admission. And I think Dominguez, which was GBR'd recently by the Supreme Court based on a different issue, is still particularly persuasive on this point. In that case, the defense counsel admitted that his client was guilty of attempted Hobbs Act robbery, and this court held that because he had made that admission, he couldn't challenge the substantial step element. I think it's the same thing here. Because they admitted they were guilty of simple assault, they admitted that those elements were proved, and one of those elements was the jurisdictional element, which is shared with the two offenses that they're actually convicted of. So is this a sort of estoppel argument? I believe so, yes. It's the basic principle. You can't take one position in the district court and a different position on appeal. And I think that runs across this court's cases. But Benson and Dominguez are on a point on this issue. So I don't think the court needs to reach this issue at all. If it does, I think it's controlled by Reed. And if it does want to reach the legal issue, it can look at the same documents as Redmond, as other district courts have looked at, and conclude that USP is, in fact, subject to federal jurisdiction. If there are other questions about jurisdiction, I'm happy to answer them. Otherwise, I was going to move just briefly to Defendant Banks' Speedy Trial Act claim. I think the court has the correct sense on this one as well. This claim is waived. 18 U.S.C. 3162 has a very clear categorical waiver requirement. You have to file a pretrial motion to dismiss, and there's no dispute that Defendant Banks didn't file one. This court has maybe recognized, I wouldn't even call it an exception, but in Hall, the defendant filed a pro se motion to dismiss and actually took other actions to alert the district court that he thought the indictment should be dismissed. But, I mean, as you say, he filed a motion to dismiss. Yes, he literally complied with the waiver provision, and here there was no motion to dismiss, and I think just because the defendant objected to two continuances, that's not the same as saying I think my indictment should be dismissed because there's a Speedy Trial Act violation. Why don't you respond to Mr. Byrne's argument that there were some factual inaccuracies in some of the orders continuing the trial date and the fairness of that? Sure. I think there were a few mistakes in the stipulations. I think that's clear, but I don't think any of them had any impact on the overall analysis here. The second continuance, for example, there was a typo with respect to how much excludable time there was and what the defendant was agreeing to, but the defendant clearly wanted a continuance. His defense counsel represented he needed more time, so I don't think there was anything unfair about that. Is your position that when the district court issued its ruling, it had the correct facts, it's just the facts were not memorialized accurately in the subsequent stipulation or order, or is it that the judge actually relied on incorrect facts in making the decision to continue the trial date? I think that's a much better way to put it. I think the district court did have the correct facts for all these continuances, and particularly on the fourth and fifth continuance, the district court held a live hearing on both of those continuances, and that, of course, is not required. With respect to the discovery issue, I think the district court heard defendant bank's counsel say that he needed more time to investigate the informed discovery. She also asked the government counsel to summarize the basis for the continuance, and government counsel said defendant bank's counsel represented he needs more time, so I think the district court had the correct facts at that time, and with respect to the trials being moved, at that time the Sweeney trial had yet to be moved, so I think she had the accurate facts at the time she made the decision to grant the continuance. With respect to the fifth continuance, again, the district court, I think, amply complied with her duty of inquiry. She held two different hearings about this continuance. She had defendant White's counsel summarize his condition. She inquired herself with BOP, and to the extent the order said the defendant was still hospitalized, I think, Judge Koh, you're correct. She knew the defendant was out of the hospital at the time, and I think she still concluded that he was physically unable to attend trial based on the facts before her, and I think specifically that he had not appeared for a pretrial conference the Wednesday and the Friday before trial, and defendant White's counsel had said his client was washed out, and defendant White's counsel asked for a continuance because he thought his client would not be able to appear. So we think all of the continuances were fine, despite any minor misstatements in the stipulations. Next, I would like to move on to defendant White's arrest claim. I agree with Judge Bennett again that I don't think there were any improper credibility determinations here. It is defendant White who submitted the video to the court, so I don't think it can be the case that if you submit a video, it could only be used to confirm his testimony, not contradict it, and if we're thinking about the ultimate inquiry, could a reasonable jury have accepted this arrest offense? I think if you have a video that clearly shows, for example— Isn't the judge supposed to just take the allegations of the defendant as true and just make a decision as a matter of law? That's what the district court is supposed to do, but here it does seem that credibility determinations were made and factual disputes were resolved. Well, I think the district court has to look at the whole proffer. The court has said that, and the video was part of the proffer. The ultimate inquiry is whether could a reasonable jury accept this defense, and I think even if defendant had gone to trial, you assume his declaration is true. He would have testified someone's on his right and his left side. No reasonable jury would believe that if there's a video that shows there, in fact, was not, and I think that's all the district court was doing was looking at the evidence that was going to go to the jury and say that, again, you can't just sort of assert things if they're not consistent with an objective record that we have here, and I think the court has done this in the past. The Kramer decision we cite, the panel did look at a video to object a self-defense claim, but apart from any, even if there were what the court would consider credibility determinations, I think defendant's claim, it fails as a matter of law. I don't think he proffered a sufficiently direct and immediate threat. If you look very carefully at his declaration, he says someone told him to attack the victim, and then he inferred. What is the case, though, that says the district court can look at the evidence and make that holistic determination that you are advocating? Because I recall seeing cases that say this is just a purely matter-of-law decision, and you have to take the facts as true as alleged by the party that's moving to make the duress defense. Sure. So what case can I look at that says this holistic determination is permissible? Well, we have cited the Kramer decision, and that was unpublished, but it is a case where this court looked at a video of a prison attack and concluded as a matter of law that there was no self-defense claim. Again, I think this court has said that the district court needs to look at the entire proffer, and to basically accept defendant's claim that there was a group of 20 people or that there was someone next to him would be to ignore part of the proffer. It would be to ignore the video evidence. Counsel, maybe I'm not correctly remembering. Did the defendant's counsel admit to the court that the statement that there was somebody on the right flank was inaccurate? I think he did admit. He said he was maybe confused about the meaning of the word flank, and I think he did make that admission, yes, during the hearing, which was on May 24th, the final pretrial conference. So I think that's another reason why it wasn't unreasonable for the district court to reach that conclusion, although I don't really think any sort of credibility findings were the basis for the court's ultimate conclusion that this was an insufficient legal defense. You still have to look at what the defendant said was the reason he believed that he was at risk and whether that qualifies as an immediate threat of death or serious bodily injury, right? Correct, and I think you honed in on page 488 of the record, his declaration, and again, what he says is someone told him to attack the victim, and he inferred, based on his nine years of experience, that an attack was going to happen. There's no description of who made that threat. I'm sorry, there was no threat. There was no description of a verbal threat. There was no description of who even told him to attack the victim. It was just his inference, his belief that this was going to happen based on his experience, and I think that's far less direct than, say, Contento Pachon, which I think is sort of the seminal case on duress in this circuit. In Contento Pachon, a drug dealer told the defendant he was going to kill his wife and children directly, and we certainly don't have anything nearly like that. The Kwok decision similarly. But can I ask you something? Those are all people who are not in custody. Why shouldn't we consider what the expert that Mr. White submitted the declaration of, in that in a prison environment, things are understood. They're implicit. They're not going to be like the cab driver in Contento Pachon and the passenger. These are people in custody who are going to have to spend a lot of time with each other in very confined spaces in that things are more understood and not explicit. Well, I don't think this court has construed this any differently in prison context. In Houston and Lippitt, there's still a requirement of sort of an explicit threat, but I think that actually cuts it at least both ways, given that prisons are dangerous places, given that many people might be in gangs, to allow a defendant to present this defense to a jury basically just on his subjective claim that he felt he was immediately at risk would really expand this defense in a big way and would make, I think, prisons much harder to manage. And I think this court's Wood decision in particular, the defendant made a similar claim that prisons are dangerous and he needed a weapon because he could be attacked at any time, and this court didn't accept that defense. Let's take, if I may, Judge Koh's question a bit further. Let's assume that we were going to view prisons as different. Is there anything in the expert Mr. Subia or Subia's declaration that establishes an immediate threat of death or serious bodily injury, even if one looked at the prison context as different? I don't think so. I think his bottom line conclusion was that the defendant could be immediately assaulted, which really is not much of a conclusion at all. I think it's very conclusory. Is there a discussion in his declaration of what kind of an assault or how serious it would be? I believe he provides one paragraph on this, that when people don't follow orders in prison, their prison gangs retaliate at the earliest opportunity. There's no description of what the earliest opportunity means, what type of retaliation there is. There's no connection to the particular gangs that the defendant is in. So I think, particularly with the immediacy element, this is basically based on the defendant's assertion that he thought he'd be attacked immediately, and I think Judge Gee recognized at page 21 of the hearing that this is the type of claim that any gang member could make when they don't follow orders, and there's no evidence here that the attack had to happen right then and there if it was going to happen at all. Could knowledge of a specific gang's past practice—that is, the knowledge that the gang has historically responded to disobedience with violence—ever qualify as a specific immediate threat? I think it's possible if there is very specific evidence about how the gang had reacted in the past, but here I think all we have is just the defendant's claim, based on his nine years of experience, that he felt there was immediate threat. And I would also add we've cited cases from the Second and Sixth Circuit arguing that being in a gang— and maybe I answered that imprecisely—I think part of our position is that if you are in a prison gang and you are aware of those violent rules, you can't assert an arrest fence at all because you have recklessly placed yourself in that dangerous situation, and you have a reasonable ability to escape by not joining the gang in the first place. But we don't have to reach that issue in order to decide this case, do we? No, you do not. I think the prima facie case was deficient here, and you don't have to get into these other cases that we've cited. So I think there are a number of reasons we would argue that the claim was deficient here. I'm running low on time. If there are any further questions about any of the issues, I'm happy to answer them. Judge Bennett, do you have any further questions? No, thank you, Judge Koh. All right. Thank you. Thank you.  Thank you, Your Honor. In response to your question, Judge Koh, regarding Reed and the fact that it doesn't mention, you know, 18 U.S.C. Section 7 or 40 U.S.C. Section 31-12 or the test for transfer of jurisdiction after 1940, and so why does it control the government response with the documents that it submitted in Redmond, which is really what the analysis in this case and Redmond in this case has come down to, is what do those documents show? And, again, it's not clear what those documents show, which is why that should not be an issue for judicial notice. Again, Reed doesn't address any of that. Reed says the documents aren't necessary. Well, Reed doesn't address those issues. It doesn't even raise those statutes. It doesn't address Godin. It doesn't address Torres. It doesn't really address the meat of any of this stuff. It kind of just is addressing, like, at a very surface level, what has to be shown to prove jurisdiction under 113. It doesn't even acknowledge. So Reed might be wrong. Reed might have decided the issue incorrectly. I don't think Reed decided the issue. It didn't mention the controlling statutes, much less the controlling case law, including the Adams case from the Supreme Court. So the judges there might have addressed the issue deficiently. No, I don't think the issue was raised. But, I mean, their holding, in your view, is just wrong that the testimony of officers or inmates can establish jurisdiction. Your view is that's just wrong. I don't think that they addressed the issue raised, Judge Bennett. I understand what the court is saying, but I don't think if the issue wasn't raised, it wasn't addressed. And none of this stuff, these documents, were addressed in that case either. But what I would submit is there are cases in the district court, there's Redmond, there's a lot of debate about what these documents establish, and there are some important issues here with respect to what has to be submitted to a jury. It seems like it would be prudent to publish an opinion, dealing with all these things, rather than have the district courts relying on unpublished opinions that don't really say very much, which the Redmond opinions, they just don't say very much. It seems like this is an important issue that should be dealt with in some detail in a published opinion to give guidance to the lower courts, and also to frame if Reed dealt with the issue or not, and whether or not it's appropriate to take the issue en banc. Otherwise, I would submit that a referral for en banc review immediately would be the other appropriate way to handle it, because Reed just doesn't struggle with the important and difficult issues involved in this case. Are there no further questions? Thank you. All right. Thank you. All right, you have, I believe you reserved three minutes. Mr. Friedman repeatedly told this court that the inquiry is whether a reasonable jury could accept the evidence, and that's false. That's flatly false. That's not the standard. That's incorrect. There's no legal support for that statement. The question is whether the evidence, if true, could satisfy the elements of the test. That is a very different question. The court is not supposed to look at the weight or the strength of the evidence and evaluate it in any way, and that's what the court did here, and it was improper. I wanted to just make a couple of factual, a couple of comments on the facts. There's a lot of attention about whether there's somebody on his right flank, as if that is... You said look at Kwok and Contento-Pachon. Yes. And in both of, so in Kwok, there's a Mr. Zheng, who's from the Chinese Intelligence Service, who's been monitoring Mr. Kwok and his wife and knows their intimate details and the family's movements and makes a threat that the wife would be arrested and disappear into a secret prison if Mr. Kwok refused to cooperate. That seems pretty specific. And if I look at Contento-Pachon, Jorge, who Mr. Contento-Pachon knows, was a passenger in Mr. Contento-Pachon's taxi. Jorge's asked him to deliver some drugs, and it says Jorge has taken the trouble to learn that Mr. Contento-Pachon is married, that he has a child. He knows the names of the wife and the child, the location of where they live, and then makes threats to their lives. That seems pretty specific. There's no identification of who is doing the threats with regard to Mr. White. There's not this level of specificity in the declarations. I think, you know, they're very different circumstances. And so, as you pointed out, in the outside world, somebody has to make explicit what the threat is, in custody, if someone says, go and assault Quincy, I'm forgetting his last name now, the victim. Alexander. Alexander, thank you. Go and assault Quincy Alexander. The unspoken, understood second part of that sentence is, or we will take care of you right now. And that's the difference. They didn't have to say, we have these knives and we're going to stab you. That was understood. That threat was perfectly clear to Mr. White. There is another prison case. What if, assuming you're correct, which authority would we rely on to make that finding, or would this have to be the very first decision to make that determination that the prison context is different and threats can be implicit or implied? I don't have a published decision making that explicit point, but that is really, again, something for the jury to decide, based on the evidence that would be presented to it at trial. It's a question of whether he has a credible fear of an imminent threat. That's something the jury can consider. And they can consider the circumstances of prison life in making that determination. The third case that I would point you to is United States v. Williams, which is a prison case. And in that case, several prisoners attempted to escape and one of them wanted to put on a duress defense, was precluded from doing so. This court reversed and remanded, finding that he should have been able to put it on. And there, the threat was explicit. It was another homemade prison knife that was used to threaten the individual to perform this criminal act. The difference there is that, as far as I can tell, it wasn't a gang case. So the person actually said, I'm going to stab you. Whereas here, Mr. White knew they were going to stab him. I'm going to stab you if you don't help me escape. Right. Well, in Williams, another inmate put a knife to his neck and chest. And so those are degrees of difference. Here, Mr. White is standing next to people who have knives and order him to do something where he knows that if he doesn't do it, he'll be stabbed. They're certainly similar enough. The threats, the nature of the threats, that this should have gone to the jury. So unless the court has other questions, I would ask that the convictions be reversed. Judge Katzman doesn't have any more questions. Judge Bennett, do you have any more questions? No, thank you, Judge Crowe. I don't have any questions either, so this case is also submitted. And thank you for all counsel's arguments, and will be adjourned. Thank you. All rise. This court for this session stands adjourned.
judges: BENNETT, KOH, Katzmann